CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 07 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CREADELL HUBBARD, | ) | CASE NO. 7:16CV00188 |
| | ) | |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| CHARLES RATLEDGE, WARDEN, | ) | |
| | ) | By: Glen E. Conrad |
| Respondent. | ) | Chief United States District Judge |

Creadell Hubbard ("Hubbard"), a federal inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that he was denied due process during a prison disciplinary proceeding.[1] Upon review of the record, the court grants respondent's motion to dismiss.

I.

On January 28, 2013, while Hubbard was incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI Butner II"), officials placed him in administrative segregation, pending an investigation, after he was involved in an incident with another inmate. After nearly ten months, on October 9, 2013, Hubbard received Incident Report No. 2502030, charging him with violating the Federal Bureau of Prisons ("BOP") prohibited acts code, sections 104 (possession of a weapon) and 224 (minor assault of any person).[2] The incident report described the following events:

---

[1] Hubbard names the warden of USP Lee County, where the challenged disciplinary hearing occurred, as the respondent to his § 2241 petition. Because USP Lee County is located within the jurisdiction of this court, see 28 U.S.C. § 127(b), the petition is properly before the court.

[2] On that same day, BOP officials also sent a criminal referral for prosecution to the United States Attorney's Office for the Eastern District of North Carolina. A grand jury returned an indictment on December 3, 2013, charging Hubbard with possession of a weapon in prison, in violation of 18 U.S.C. § 1791(a)(1). Hubbard pleaded guilty to this offense in April 2014, and was sentenced to a term of 18 months in prison.

> On October 9, 2013, . . . an SIS investigation concluded that inmate [Hubbard] did in fact Possess a Weapon and Assault inmate [Doe] by striking him repeatedly with a 13 ¾ inch pipe (weapon) he took out of inside recreation at 7:33 am.[3] The pipe had a lock attached to one end.
>
> Specifically, [in institutional video recorded] on January 28, 2013 . . . inmate Hubbard can be seen exiting the Physical Therapy room. . . . As he turns away from the camera the white pipe can be seen in his left front pocket. . . .
>
> On January 28, 2013, at approximately 10:45 am, as seen on . . . video, [Hubbard] is observed in Housing Unit OD walking out of cell 18 . . . with the weapon (pipe) in his right hand as he enters [cell 19]. At 10:47 am, [Hubbard] and [Doe] are observed exiting the cell hanging on to each other as they move to the center of the common area. [Hubbard] can be seen striking [Doe] in the head with the weapon (pipe) in his right hand at least twice. [Doe] can then be seen going to the floor on his back and pulling Hubbard on top of him. At 10:48 am [Doe] takes the weapon (pipe) away from [Hubbard]. [Doe] can be seen swinging the weapon (pipe) at [Hubbard] to back him up. Hubbard then walks away [and Doe] takes the weapon (pipe) to the Unit Officer.
>
> During an interview conducted with [Hubbard that day], he admitted that he was in possession of the weapon (pipe). As a result of this altercation [Hubbard] suffered a small superficial abrasion to his left index finger.
>
> As a result of this assault, [Doe] suffered two 2-3mm lacerations on left side of head.

(Wahl Aff. Attach. A, at 2, ECF No. 5-2.)

A prison disciplinary hearing officer ("DHO") conducted Hubbard's first formal hearing on these charges on December 12, 2013. Hubbard alleges that during the hearing, he asked to know all the evidence being used against him, but the DHO denied this request. Hubbard then

---

[3] Under BOP regulations, the type of disciplinary hearing Hubbard challenges is a later step in the disciplinary process. See gen. 28 C.F.R. Part 541. When BOP staff has a reasonable belief that an inmate has violated a section of the prohibited acts code, they prepare an incident report, describing the incident and the prohibited acts the inmate is charged with committing. The inmate receives a copy of the incident report and may make a statement or exercise his right to remain silent. After additional investigation, a unit discipline committee ("UDC) will review the incident report, including any statement or documentary evidence the inmate chooses to present on his own behalf. The UDC may dismiss or resolve the matter, or refer it to the discipline hearing officer ("DHO") for further proceedings. The DHO conducts a formal disciplinary hearing, finds the inmate guilty or not guilty based on all the evidence, imposes sanctions, and makes a written record of the reasons for his findings, which is provided to the inmate.

allegedly exercised his right to remain silent. The DHO ruled that Hubbard had committed the prohibited acts as charged and imposed sanctions: for the 104 offense, disallowance of 41 good conduct days; for the 224 offense, disallowance of 27 good conduct days; and for each offense, 30 days of disciplinary segregation and loss of commissary privileges for six months.

Hubbard appealed the DHO's findings, and in May 2014, the BOP regional director granted the appeal in part, expunged the disciplinary conviction, and remanded the incident report for a rehearing.[4] By this time, Hubbard had been transferred to USP Lee. On September 18, 2014, an officer served him with a copy of Incident Report No. 2502030 for purposes of the rehearing. The DHO report of the rehearing indicated that on September 18, 2014, Hubbard signed a form waiving 24-hour notice of the hearing that occurred later that same day. The form also indicated that Hubbard did not request an advisor or witnesses for the hearing.

The DHO report stated that at the hearing, Hubbard indicated again that he did not request a staff representative or any witnesses and did not present any documentation as evidence. Hubbard allegedly asked the DHO to tell him the reasons that the regional director granted a rehearing on the two charges, and the DHO stated that according to policy, Hubbard could not know the reasons. According to the report, the DHO read the description of events from the incident report and asked Hubbard if the report was true. The DHO noted that Hubbard said, "Yes, sir," and indicated that he "had his reasons." (Wahl Aff. Att. B, at 7, ECF No. 5-2.)

The DHO found that Hubbard had committed the act as charged. In the written report, the DHO stated that he based this guilty finding on the evidence in the incident report and Hubbard's admission that he had committed the prohibited acts. The DHO also noted that Hubbard had presented no evidence to show that he had not committed the acts charged, and that

---

[4] Hubbard states in his petition that the incident report was expunged. His own submissions, however, indicate that only the disciplinary convictions were expunged, and the incident report was remanded for rehearing, as stated. (See Pet., at 27, ECF No. 1.)

3

the DHO found no such evidence in the record. Therefore, the DHO report stated, "the DHO finds you violated Code 104, Possession of a Dangerous Weapon, and code 224, Minor Assault." (Id. at 8.) As penalty for the offenses, the DHO upheld the sanctions imposed after the December 2013 hearing and noted that Hubbard had already served all of them. The DHO report also states reasons for the sanctions: to hold Hubbard accountable for his possession and use of a weapon to assault another person, because such conduct "threatens the health, safety, and welfare of not only the inmate involved, but all other inmates and staff alike. In the past, this action/behavior has been shown to result in more serious injuries." (Id. at 9.) The report further states that the sanctions imposed were selected as required under the applicable penalty guidelines, but also as an immediate and long-term deterrent from future rule infractions and misconduct.

When Hubbard received a copy of the DHO report for the rehearing, he noticed that the first section of the form stated that he was charged with a violation of code section 104 "possession of a sharpened weapon [and] Minor assault."[5] (Id. at 6.) Hubbard allegedly informed the DHO that the incident report and initial DHO hearing had not involved any such charge against him. He also allegedly requested two witnesses (another inmate and a staff member) to show that he did not have a prison knife or shank during the January incident for which he was charged. The DHO allegedly stated that these witnesses had already submitted written statements during the initial hearing. Hubbard then exercised his right to remain silent.

Hubbard appealed the DHO's findings through all required levels of the BOP administrative remedies procedures and then filed this § 2241 petition. In the petition, Hubbard

---

[5] Hubbard erroneously states in his petition that the regional director expunged the incident report and that Hubbard received a new incident report at the rehearing that misstated the nature of the weapon charge under code 104. The defendants' evidence establishes, however, that both hearings concerned the same incident report, No. 2502030, and that the typographical error to which Hubbard refers appeared on the DHO report, not the incident report. The court notes that the heading of this DHO report also misstates the date of the incident report as October 9, 2014, and the date of the incident itself as January 28, 2014, when these dates should both be 2013.

4

alleges that he did not receive all constitutionally required due process protections during this rehearing because: (1) the DHO failed to give him proper notice of the charges against him; (2) the DHO denied him the right to call witnesses or present documentation;[6] (3) no one told him why the Regional Director ordered a rehearing; and (4) the DHO erred in combining the two violations to take a total of 68 days good conduct time.[7] As relief, Hubbard seeks reinstatement of his lost good time.

Respondent has filed a motion to dismiss. The court notified Hubbard of respondent's motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and warned him that judgment might be granted for respondent if he did not reply to the motion by filing counter-affidavits or other relevant documents contradicting respondent's evidence. Hubbard never responded. However, the time allotted for his response has expired, making the matter ripe for the court's consideration.

II.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In prison disciplinary hearings where the proceedings potentially involve the loss of good time credits, the rights afforded inmates are limited to the following: (1) written notice of the charged violations at least 24 hours before the hearing; (2) disclosure of evidence against the prisoner; (3) the right to call witnesses and present documentary evidence unless unduly hazardous to institutional safety or correctional goals; (4) a neutral and detached

---

[6] Hubbard contends that he "was denied the right to defend [himself] against these charges because I was never charged with possession of" a prison knife or shank. (Pet. Mem. Supp., at 12, ECF No. 1.)

[7] Hubbard contended in his administrative appeals that only 54 days of good conduct time could be taken at one time.

5

factfinder; and (5) a written statement by the fact finder of the evidence relied on and reasons for disciplinary action. Id. at 559-566.

When an inmate brings a habeas petition to challenge the sufficiency of the evidence to support his disciplinary conviction, the requirements of due process are met when "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Id. at 456.

The respondent argues that the evidence in the record establishes that the procedural defects that Hubbard alleges did not deprive him of any constitutionally mandated procedural protection under Wolff and Hill. The court agrees.

First, the incident report initially served on Hubbard in October 2013 provided him notice of the charges against him. This notice occurred more than a year before the rehearing. It alone comported with the notice requirement recognized in Wolff, as the primary function of this notice "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." 418 U.S. at 563. Hubbard received notice of the charges a second time on September 18, 2014, when he was served with a copy of the original incident report for the rehearing. At that time, he also signed a form waiving the 24-hour prehearing notice required under BOP policy.

Hubbard now contends that the typographical error on the DHO report deprived him of proper notice of the charges and the ability to present a defense, because it misstated the 104 charge as involving a sharpened weapon. This assertion has no merit. The evidence in the record indicates that the DHO signed the DHO report on October 30, 2014, more than a month

6

after Hubbard's rehearing, and an officer delivered the report to Hubbard on December 21, 2014. Hubbard does not dispute the authenticity of these documents or offer any evidence that he received a copy of the DHO report with its typographical error at any time before the hearing.

In any event, even if the misstatement of the 104 charge somehow reached Hubbard before the hearing, he has not shown any resulting prejudice. Hubbard received a copy of the incident report more than a month before the rehearing, and it and the rest of the DHO report clearly referred to the weapon as a pipe. The DHO did not note any evidence or finding that Hubbard's weapon on January 28, 2013, was a sharpened instrument. Most importantly, Hubbard fails to show that the alleged confusion over the nature of the 104 charge resulted in any prejudice to his ability to defend himself. See Blount v. Johnson, No. 7:06CV00545, 2007 WL 1225993, at *3 (W.D. Va. Apr. 24, 2007) (holding that claim of deprivation of due process based on an alleged failure to provide adequate written notice of the offense requires showing that the defect prejudiced petitioner's defense) (citing Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir. 1997); Griffin-Bey v. Bowersox, 978 F.2d 455, 456 (8th Cir. 1992); White v. U.S. Parole Comm'n, 856 F.2d 59, 61 (9th Cir. 1988)).

Second, Hubbard was not deprived of the right to call witnesses or present evidence. The DHO report indicated that Hubbard was twice given the opportunity to seek witness statements, but chose not to do so, and that he chose not to present any documentation at the hearing. Hubbard now alleges that he asked to present witnesses to say that he did not possess a sharpened instrument. Such testimony was not material to his defense, because the incident report described the weapon repeatedly as a pipe, not a knife or shank. Moreover, Hubbard's allegations indicate that the DHO already had statements from the desired witnesses, and Hubbard himself had the opportunity to make a statement about the nature of his weapon. Even

7

now, Hubbard does not submit any documentation that he wished to submit at the DHO hearing. Most importantly, Hubbard was not convicted of possession of, or assault with, a sharpened instrument. Based on the foregoing, the court cannot find that he has shown any prejudice to his defense from the alleged deprivation of the right to present witnesses and documentation.

In his third and fourth claims, Hubbard complains that he never learned the reason for the rehearing, and that the DHO penalized him with a loss of more good conduct time than applicable guidelines allowed. Under <u>Wolff</u>, an inmate has no constitutionally protected right to an appeal from a disciplinary finding or to any particular range of punishment. Thus, the defects alleged in Claims (3) and (4) do not allege any deprivation of constitutionally protected rights. See <u>Williams v. O'Brien</u>, No. 7:08cv00424, 2008 WL 2943146, at *2 n.4 (W.D. Va. July 30, 2008) ("To the extent petitioner asserts that the BOP's failure to abide by its own regulations vests in him a constitutional claim, the claim fails.") (citing <u>United States v. Caceres</u>, 440 U.S. 741, 751-52 (1978) ("violation of agency regulation does not raise constitutional question.") (other citations omitted).

Finally, the record indicates that Hubbard did receive the procedural protections to which the Constitution entitled him. He received advance notice of the charges on two occasions before the rehearing and a chance to present evidence. He received a written statement of the evidence against him on the incident report, and again, on the DHO report. The DHO report stated the evidence on which the DHO relied in finding Hubbard guilty of the charged conduct and stated the reasons for the penalties imposed. The record includes no evidence that the DHO was not an impartial fact finder, and the guilty finding was based on some facts, with no contradictory facts presented.

III.

For the reasons stated, the court finds from the evidence that Hubbard's due process claims regarding his disciplinary proceedings are without merit. Accordingly, the court will grant the respondent's motion to dismiss. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 7th day of February, 2017.

/s/ Glen E. Conrad
Chief United States District Judge